UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN HUNT,<br><br>    Plaintiff,<br><br>v.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>    Defendant. | Case No. 13-cv-05966-HSG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL, DENYING IN PART DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO FILE DOCUMENTS UNDER SEAL**<br><br>Re: Dkt. Nos. 53, 62, 63, 69, 70 |

Plaintiff Susan Hunt ("Plaintiff") has filed a motion to compel the deposition of Defendant Continental Casualty Company's ("CNA's") Chairman and CEO, Tom Motamed. Dkt. No. 53. CNA objects and seeks a protective order, arguing that the "apex doctrine" shields Mr. Motamed from being deposed. Dkt. No. 63 at 1. CNA also filed an administrative motion to seal certain deposition excerpts and a declaration by Mr. Motamed submitted in connection with the motion for protective order. Dkt. No. 62.

Having read and considered the papers submitted by the parties, the Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* N.D. Civ. L.R. 7–1(b). For the reasons explained below, Plaintiff's motion to compel is GRANTED, and CNA's motion for protective order is DENIED except with regard to the length of Mr. Motamed's deposition. CNA's administrative motion to seal is GRANTED IN PART AND DENIED IN PART.

**I.     MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER**

    **A.     Legal Standard**

Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue

burden or expense," including by prohibiting a deposition or limiting its scope. Fed.R.Civ.P. 26(c)(1)(A) and (B). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2014 WL 939287, at *1 (N.D. Cal. 2014) (citing *Phillips v. GMC*, 307 F.3d 1206, 1210–1211 (9th Cir. 2002)). Absent extraordinary circumstances, it is rare for a court to disallow the taking of a deposition. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("[A] strong showing is required before a party will be denied entirely the right to take a deposition.") (internal quotations and citations omitted); *In re Google Litig.*, No. C 08-03172 RMW, 2011 WL 4985279, at *2 (N.D. Cal. 2011) ("A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied."); *Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) ("[I]t is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances.") (internal quotations and citation omitted); *Powertech Technology, Inc. v. Tessara Inc.*, No. C 11-6121 CW, 2013 WL 3884254, at *1 (N.D. Cal. 2013) (same).[1]

"In determining whether to allow an apex deposition [i.e., the deposition of a high-level executive], courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has

---

[1] CNA claims that under the Central District of California's decision in *K.C.R. v. County of Los Angeles*, No. CV 13-3806, 2014 WL 3434257, at *2 (C.D. Cal. 2014), it is Plaintiff's burden to "establish 'good cause' for an order compelling Mr. Motamed's deposition." Dkt. No. 71 at 3. The Court disagrees for at least three reasons. First, cases in this district make clear that the burden remains on the party seeking a protective order when the "apex doctrine" is asserted as a basis for limiting discovery. *In re Transpacific* 2014 WL939287 at *1 (noting there is "no binding Ninth Circuit or Supreme Court precedent requiring th[e] result that the burden be shifted to the party seeking discovery by deposition of a high level business executive") (citation omitted); *see also Powertech*, 2013 WL 3884254 at *1 (explaining that "[t]he apex deposition principle is not an automatic bar that the party propounding the discovery must overcome by a showing of good cause")(citation omitted); *Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436 CW, 2011 WL 1753982, at *15 (N.D. Cal. 2011) ("A party seeking to prevent discovery carries a heavy burden to show why discovery should be denied."). Second, it is unclear whether *K.C.R.* applied anything other than the well-established principles discussed above. *See K.C.R*, 2014 WL 3434257 at *4 (acknowledging that "a party opposing a deposition carries a heavy burden to show why discovery should be denied") (quoting *Google Inc. v. American Blind & Wallpaper Factory, Inc.*, No. C 09-4436, 2006 WL 2578277, at *3 n. 3)(internal quotations omitted). Third, *K.C.R.* involved a high-ranking public official, raising considerations different from those present in this case. *Id.* at *5.

exhausted other less intrusive discovery methods." *Apple v. Samsung*, 282 F.R.D. at 263. A district court has broad discretion to determine whether, on the totality of the record, a party seeking a protective order has met its burden of showing good cause to block an apex deposition. *See Apple v. Samsung*, 282 F.R.D. at 262-263 (finding that upon a party's showing of good cause, the court has discretion to limit or preclude an apex deposition, particularly where the discovery sought can be obtained from a less burdensome source); *In Re Google Litig.*, 2011 WL 4985279 at *2 (finding that when a party seeks to pursue an apex deposition, "the court may exercise its discretion under the federal rules to limit discovery" by precluding or limiting the deposition). The party seeking to take such a deposition does not need to prove conclusively in advance that the deponent definitely has unique, non-repetitive information; instead, "where a corporate officer may have *any* first-hand knowledge of relevant facts, the deposition should be allowed." *Grateful Dead Productions v. Sagan*, No. C 06-7727 (JW) PVT, 2007 WL 2155693, at *1, n. 5 (N.D. Cal. 2007) (emphasis in original) (citing *Blankenship*, 519 F.2d at 429 and *Anderson v. Air West, Inc.*, 542 F.2d 1090, 1092-93 (9th Cir. 1976)). *See also Powertech*, 2013 WL 3884254 at *2 (noting that the party seeking deposition "was not required to prove that [deponent] certainly has [relevant] information"). Nor has formal "exhaustion" been viewed as an absolute requirement; instead, exhaustion of other discovery methods is an important, but not dispositive, consideration for a court to take into account in deciding how to exercise its discretion. *In re Transpacific*, 2014 WL 939287 at *5 (noting that exhaustion of other discovery routes is an "important consideration" but not a necessary precondition to the taking of an apex deposition).

**B.     Analysis**

Based on the parties' submissions, the Court concludes that CNA has not met its burden of showing that extraordinary circumstances are present here which warrant an order precluding Mr. Motamed's deposition altogether. First, Plaintiff has proffered a substantial basis for concluding that Mr. Motamed may have unique first-hand knowledge regarding the facts at issue in this case. "[W]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *In re Transpacific*, 2014 WL 939287 at *2 and *5 (allowing an apex deposition to go forward based on finding that witness might have "unique,

3

firsthand knowledge relevant to [the] case"); *WebSideStory v. Netratings, Inc.*, No. 06cv408 WQH(AJB), 2007 WL 1120567 at, \*2 (S.D. Cal. 2007) (allowing deposition of former CEO based on adequate showing that he had "unique, personal knowledge" of facts regarding the litigation).

Here, Plaintiff's gender and age discrimination claims include direct allegations regarding actions taken by and statements made by Mr. Motamed. Dkt. No. 3, Ex. 1 at ¶¶ 18-24, 83; *see also* Declaration of Susan H. Hunt, Dkt. No. 53-1. Plaintiff's claims rest not only on information and belief, but on a number of direct interactions with Mr. Motamed. *Id.* For example, Plaintiff describes comments made by Mr. Motamed at one meeting she attended in which he discussed "turning over" Branch Vice Presidents, and at another meeting at which he pointed out 20 people he had been responsible for hiring (19 of whom were men). Dkt. No. 70 at 5; Dkt. No. 53-1. In addition, witnesses who have been deposed have testified regarding conversations with Mr. Motamed about Plaintiff and about Mr. Motamed's visit to the San Francisco branch office in 2011. Dkt. No. 70 at 9-10. A December 2011 email regarding the San Francisco branch discussed at one of those depositions reflects an executive's characterization that "[w]e are also five months further along and Thomas' visit independently confirmed the situation is no better." *Id.* at 10. A deponent also confirmed that Mr. Motamed made the decision to hire two Zone Officers who Plaintiff alleges were placed in branches after female Branch Vice Presidents were demoted. *Id.* at 11-12. Plaintiff alleges that she was a Branch Vice President over 50 years old when she was compelled to resign, and that a male Zone Executive was then appointed in the San Francisco branch after she left CNA. Dkt. No. 3, Ex. 1 at ¶¶ 24, 54-55. In short, the areas of factual inquiry Plaintiff identifies are plainly relevant to her discrimination claims.

CNA's repeated assertions that the issues Plaintiff seeks to explore are "irrelevant" or "lack probative value," are not persuasive factually or legally. *See, e.g.*, Dkt. No. 71 at 4-9. To take one example, there is no legal requirement that a deponent must have formally "evaluate[d] Plaintiff's performance" (Dkt. No. 63 at 10-12) before a deposition will be permitted in an employment discrimination case. And the Court agrees with Plaintiff that Mr. Motamed's declaration does not establish that he has *no* relevant first-hand knowledge on this or any other point. Without a doubt, CNA has a very different view than Plaintiff regarding the facts that will

4

ultimately be proven and the inferences to be drawn from them, but that is not a basis for precluding Mr. Motamed's deposition entirely.[2] Mr. Motamed's declaration presents CNA's version of events, but that declaration is not a substitute for Plaintiff's entitlement under the Federal Rules to ask questions in person and obtain answers under oath. Nor is this a case like *Affinity Labs* in which the *sole* asserted basis for deposing Apple's CEO was a number of statements he made in press releases and other entirely public settings. *Affinity Labs*, 2011 WL 1753982 at *16 (plaintiff's argument that CEO had relevant first-hand knowledge was based "only on Mr. Jobs' public statements regarding Apple products or other patents or lawsuits"). In short, the Court agrees with Plaintiff that this is not a case in which the "high-level executive" sought to be deposed had "little or no contact with the plaintiff" or knowledge of the issues in the case. Dkt. No. 70 at 6-7. Instead, Plaintiff has made a plausible prima facie showing that Mr. Motamed may have first-hand knowledge of relevant matters as a percipient witness, and CNA has not met its burden of showing an entitlement to the extraordinary remedy of precluding the requested deposition.

    CNA also has not shown that Mr. Motamed's information would be cumulative. On the points Plaintiff has identified, other witnesses have testified that they did not know of, did not recall or were not involved in communications and decisions allegedly made by Mr. Motamed. Dkt. No. 70 at 9-13. Mr. Motamed's testimony regarding his own statements and decisions will thus be non-duplicative. For similar reasons, the Court is satisfied that Plaintiff has attempted less intrusive discovery methods. Plaintiff has deposed other CNA executives, but those depositions have not rendered Mr. Motamed's deposition redundant, for the reasons discussed above.

    Finally, the Court notes that CNA points to no specific undue burden or expense that the deposition would create, beyond asserting generally that Mr. Motamed has a very full calendar and that the close of the first quarter is approaching. *See* Dkt. No. 71 at 4 (citing Motamed Declaration at ¶ 11). The Court does not doubt that Mr. Motamed is a busy person with substantial

---

[2] Obviously, in evaluating the record at this stage, the Court is not reaching any conclusions regarding the merits of Plaintiff's allegations, or the likelihood that she ultimately will be able to prove them.

responsibilities. But that fact does not control where, as here, there is a substantial basis to believe that he may have relevant information to which Plaintiff is entitled under the Federal Rules. *In re Transpacific*, 2014 WL 939287 at *3 ("that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery"); *In re Google Litig.*, 2011 WL 4985279 at *2 (permitting the deposition of Google CEO Larry Page despite his busy schedule).

For these reasons, Plaintiff's Motion to Compel is GRANTED, and Defendant's Motion for Protective Order precluding Mr. Motamed's deposition in its entirety is DENIED.

However, the Court ORDERS that Mr. Motamed's deposition shall be limited to three hours, which should be ample time for Plaintiff's counsel to cover the targeted issues identified in Plaintiff's filings. *See In re Transpacific*, 2014 WL 9239287 at *6 (limiting airline executive's deposition to two hours); *Apple v. Samsung*, 282 F.R.D. at 259 (limiting deposition of Samsung executive to two hours); *In re Google Litig.*, 2011 WL 4985279 at *2 (limiting deposition of Google CEO to three hours); *Google Inc.*, 2006 WL 2578277 at *3 (limiting deposition of Google CEO to three hours).

## II.   DEFENDANT'S ADMINISTRATIVE MOTION TO SEAL

In conjunction with the filings in this matter, Defendant has requested that this court seal the following pursuant to Civil Local Rule 79-5: (1) the declaration of Thomas F. Motamed; (2) designated excerpts from the deposition of Stephen Stonehouse; and (3) designated excerpts from the Deposition of Elizabeth Aguinaga.

Because the motion to compel and motion for protective order are non-dispositive motions, the "good cause" standard (rather than the "compelling reasons" standard) applies to CNA's motion. *Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1179-80 (9th Cir. 2006). Under the "good cause" standard, the Court may grant a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (internal quotations omitted); Fed. R. Civ. P. 26(c). This can include an order sealing portions of the court record. *See Kamakana*, 477 F.3d at 1179-80 (noting that a particularized showing of "good cause" justifies a district court acting to preserve the "secrecy of a sealed discovery material attached to a non-dispositive motion"); Fed.

R. Civ. P. 26(c) (allowing the court to seal deposition transcripts and otherwise prevent the disclosure of discovery items such as trade secrets, confidential research, or commercial information "for good cause shown"). To obtain such an order, CNA must make a "particularized showing" of good cause. *See Kamakana*, 477 F.3d at 1178, 1180 (citations omitted). This standard presents a lower burden for the party wishing to seal documents than the "compelling reasons" standard, because "[t]he cognizable public interest in judicial records that underlies the 'compelling reasons' standard does not exist for documents produced between private litigants." *Id*.

The Court finds that CNA has met its burden with respect to its request to seal specified portions of Mr. Stonehouse's and Ms. Aguinaga's deposition transcripts. Those excerpts were designated as confidential under the parties' stipulated protective order, and contain detailed internal financial, strategic and operational information, as well as a description of a confidential internal employment investigation conducted by CNA.

The same cannot be said for Mr. Motamed's declaration. CNA's concern that the declaration might be "used (or misconstrued) by the public, including the media, for some improper purpose," Dkt. No. 62 at 4, does not satisfy the good cause standard. Further, CNA's supposed concerns regarding the "confidential content" of Mr. Motamed's declaration are hard to square with CNA's decision to reference the contents of the declaration in detail throughout its brief, which it does *not* seek to file under seal. Dkt. No. 71. Because CNA has not shown good cause to seal the Motamed Declaration, its motion to seal that declaration is DENIED. CNA's motion is GRANTED with respect to the specified deposition excerpts.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is GRANTED. Defendant's Motion for Protective Order is DENIED IN PART and GRANTED IN PART. Mr. Motamed's deposition shall proceed on a date mutually agreeable to the parties before the discovery cutoff in this case and shall be limited to three hours.

Defendant's Administrative Motion to File certain documents under seal is DENIED IN PART and GRANTED IN PART. The Court will allow the filing of the deposition excerpts, but

7

1  not Mr. Motamed's declaration, under seal.  CNA shall comply with Local Rule 79-5(f) consistent
2  with the Court's order.
3  **IT IS SO ORDERED.**

5  Dated:   4/3/2015

6                                                   HAYWOOD S. GILLIAM, JR.
7                                                   United States District Judge

United States District Court
Northern District of California