UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN HUNT,<br><br>   Plaintiff,<br><br> v.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>   Defendant. | Case No. 13-cv-05966-HSG<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 109 |

Pending before the Court is Defendant Continental Casualty Co.'s motion for summary judgment on each of Plaintiff Susan Hunt's five causes of action. Dkt. No. 109. For the reasons articulated below, the motion is DENIED.

**I. EVIDENTIARY OBJECTIONS AND REQUESTS FOR JUDICIAL NOTICE**

Both parties raised objections to the evidence submitted in relation to Defendant's motion. Plaintiff's evidentiary objections fail to comply with Civil Local Rule 7-3(a) because they were not included within her opposition brief. As a result, the Court OVERRULES Plaintiff's evidentiary objections for failure to comply with the Local Rules.[1]

Defendant first objects to numerous portions of the declaration of Susan Hunt, Dkt. No. 125-49 ("Hunt Decl."). As a threshold matter, the Court rejects Defendant's suggestion that it should disregard Plaintiff's declaration and deposition testimony as "self-serving." Dkt. No. 127 ("Reply") at 4; *see Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("Although

---

[1] The Court also notes that Defendant failed to comply with Civil Local Rule 3-4(c)(2), which requires that all footnotes in papers presented for filing be at least 12-point font. The Court doubts whether the page of evidentiary objections included in Defendant's reply brief would have fit within the 15-page limit if the footnotes in that brief had been the proper font size. Nevertheless, the Court will consider Defendant's evidentiary objections. The parties are directed to fully comply with the Local Rules going forward.

the source of the evidence may have some bearing on its credibility and on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature."). Furthermore, Defendant's evidentiary objections are not sufficiently specific to enable the Court to properly consider them. Defendant objects to entire paragraphs—and at times, almost entire pages—"so it is not possible for the Court to fairly evaluate the objections." *Schaeffer v. Gregory Vill. Partners*, 2015 WL 2267813, at *5 (N.D. Cal. May 14, 2015). For example, Defendant objects that lines 1-19 of page 2 of the Hunt Declaration is inadmissible hearsay. But lines 9-11 read: "By 2011, I had succeeded in growing the San Francisco Branch to the third largest in the country. In 2011, on my performance goals, I was 3% better than plan, and retentions were 79% versus plan of 76%. Moreover, I had a Calendar Year (CY) Gross Combined Ratio of 92%." These lines do not reference any statements made by persons other than Plaintiff, so it is not clear why they implicate the hearsay rule.[2] The Court therefore overrules Defendant's vaguely asserted objections to the Hunt declaration without prejudice to the assertion of proper objections, made to specific statements, at the time of trial or in connection with a future motion.

Defendant further objects to exhibits L-OO, RR, and SS to the declaration of Stacey L. Pratt, Dkt. No. 125-2 ("Pratt Decl."), on the basis that Plaintiff has failed to properly authenticate these documents. In her declaration, Pratt states that each of these exhibits was "produced by [Defendant] in this action." Pratt Decl. ¶¶ 14-43, 46-47. Defendant does not contest the authenticity of these documents. Accordingly, Defendant's objections to exhibits L-OO, RR, and SS to the Pratt declaration on the basis of authentication are OVERRULED.[3] *See Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996) (ruling that "[t]he district court did not err in considering" documents that were produced by the plaintiff without

---

[2] Even if the Court were to assume that Defendant's objection is based on Plaintiff recounting the contents of other documents, Defendant does not provide sufficient information for the Court to determine whether those documents fall within the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6).

[3] Because the Court does not rely on exhibit SS, the Court does not reach Defendant's additional objection regarding Plaintiff's untimely production of that document.

contesting authenticity, notwithstanding plaintiff's objection that the defendant could not properly authenticate the documents).

Defendant objects to exhibit S to the Pratt declaration on the additional ground that "it is not included as an attachment." Reply at 15. Exhibit S appears as a docket entry attached to the Pratt declaration. The Court is unable to discern why this is objectionable. Accordingly, Defendant's objection is OVERRULED.

Finally, both parties request that the Court take judicial notice of certain documents. Dkt. Nos. 126, 127-1. Because the Court does not rely on any of those documents, the requests for judicial notice are DENIED AS MOOT.

## II. BACKGROUND

Defendant (sometimes referred to as "CNA") hired Plaintiff as branch vice president ("BVP") of its San Francisco office in 2003. Dkt. No. 3 ("Complt.") ¶ 3; Hunt Decl. ¶ 3. As BVP, Plaintiff's direct supervisor was Stephen Stonehouse, Western Zone Officer. Hunt Decl. ¶ 5. In 2009, Tom Motamed joined Defendant as Chief Executive Officer, and Tim Szerlong joined Defendant as President of Worldwide Field Operations. Complt. ¶ 3; Pratt Decl. Ex. A, 12:2-7. On August 31, 2012, at age 53, Plaintiff resigned from her employment with Defendant. Hunt Decl. ¶ 43.

In the present motion, Defendant contends that the undisputed evidence shows that Plaintiff voluntarily resigned after her performance began to suffer under new management's increased expectations of its sales leaders. Plaintiff counters that triable issues of fact exist as to whether Defendant's alleged pattern of ageist and sexist conduct, coupled with a series of retaliatory and discriminatory performance reviews, violated antidiscrimination laws and created conditions so intolerable that she was forced to resign.

## III. DISCUSSION

### A. Legal Standard

Summary judgment is proper where the pleadings and evidence demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material

issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. To survive a motion for summary judgment, the non-moving party must then show that there are genuine factual issues that can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). To do so, the non-moving party must present specific facts creating a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.* Moreover, the court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

In an employment discrimination case, a plaintiff "need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000); *see also Nigro*, 784 F.3d at 499 (reversing grant of summary judgment for defendant in employment discrimination case and noting that "it should not take much for [a] plaintiff in a discrimination case to overcome a summary judgment motion."). "This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." *Chuang,* 225 F.3d at 1124 (internal quotation marks omitted). The Ninth Circuit has "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination

1  claims are frequently difficult to prove without a full airing of the evidence and an opportunity to
2  evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th
3  Cir. 2004).

### B. First Cause Of Action (Constructive Discharge)

A "constructive discharge in violation of fundamental public policy gives rise to a tort action in favor of the terminated employee."[4] *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1252 (1994). "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign." *Id.* at 1244. In order to prevail on a claim for constructive discharge, a plaintiff must show "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Id.* at 1251.

Constructive discharge requires "adverse working conditions [that are] unusually 'aggravated' or amount to a 'continuous pattern.'" *Id.* at 1247. An "employer must either deliberately create the intolerable working conditions that trigger the resignation or, at a minimum, must know about them and fail to remedy the situation in order to force the employee to resign." *Id.* at 1249-50. "The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact." *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987).

Defendant contends that Plaintiff's complaints are "nothing but the trivial grievances of a hyper-sensitive employee," Mot. at 14, and that her "constructive termination claim fails because no reasonable employee would quit after receiving a 'Meets Expectations' rating coupled with a salary increase and a $42,000 bonus," Reply at 1. But Defendant oversimplifies—or ignores—the substantial evidence presented by Plaintiff suggesting that, after Motamed and Szerlong joined

---

[4] In its motion, Defendant argues Plaintiff's claim for constructive discharge "must be dismissed, as it is not a cause of action at all, but, rather, an element of Plaintiff's other claims." Dkt. No. 109 ("Mot.") at 8. In line with *Turner*, the Court interprets Plaintiff's first cause of action as a claim for constructive discharge in violation of public policy. Defendant conceded that such a cause of action is viable at the motion hearing.

5

CNA in 2009, she was subjected to a pattern of unjustifiably negative and discriminatory treatment targeted at pushing her out the door.

First, Plaintiff has presented evidence suggesting that Motamed and Szerlong fostered a culture at CNA that was discriminatory towards older employees and female employees. Stonehouse, Plaintiff's supervisor, repeatedly referred to her as "old CNA," Pratt Decl. Ex. B, 75:15-20, a term that at least one other BVP understood to "refer to older employees," *id.* Ex. F, 112:11-20. Even if, as Defendant contends, this term referred to individuals who had been employed by CNA before Motamed and Szerlong took over in 2009, *see* Mot. at 15, a rational factfinder could still conclude that its use was discriminatory given the additional evidence presented by Plaintiff in support of her contention that the "new" CNA emphasized a younger male culture. Moreover, Plaintiff has presented evidence suggesting that Defendant failed to promote an employee because it deemed her to be "long-term CNA." Pratt Decl. Ex. F, 158:23-159:8. And Plaintiff has also presented evidence that Szerlong, referring to an older employee, stated "Can you imagine a college graduate working for her?" *Id.* Ex. J, 167:15-168:8.

Plaintiff's evidence also supports the existence of a hostile culture toward female employees. When Plaintiff discussed the lack of women in key management positions at CNA with Stonehouse, he told her "they look in the mirror and hire themselves."[5] *Id.* Ex. H, 469:24-470:12. Plaintiff declared that the working environment at CNA during the 2009-2012 time period became "increasingly 'boys club.'" Hunt Decl. ¶ 10. Of the 12 BVPs hired between January 1, 2009—when Motamed and Szerlong took over—and Plaintiff's termination in 2012,

---

[5] Defendant argues that this statement "is little more than an innocuous stray remark, which, as a matter of law, cannot constitute constructive discharge." Mot. at 16 n.15. If this were the only evidence presented by Plaintiff in support of her constructive discharge claim, the Court might be inclined to agree with Defendant. However, Plaintiff has presented additional evidence in support of her claim, so the Court may properly consider whether all of the evidence, taken together, creates triable issues of disputed fact. *See Reid v. Google, Inc.*, 50 Cal. 4th 512, 541 (2010) ("Although stray remarks may not have strong probative value when viewed in isolation, they may corroborate direct evidence of discrimination or gain significance in conjunction with other circumstantial evidence."); *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015) ("When the plaintiff has some direct evidence but also must rely on circumstantial evidence to show pretext, we treat direct and circumstantial evidence alike, and we consider both types of evidence cumulatively.") (internal citations omitted).

only two were women. Dkt. No. 113. Of the six female BVPs employed by CNA as of January 1, 2009, only three remained following Plaintiff's resignation, and only one remains today. Pratt Decl. Ex. MM. When Plaintiff complained about the lack of women in field leadership positions to Patricia Wong, an employee in CNA's Human Resources department, she responded "they don't want to hear that." *Id.* Ex. D, 50:4-15; Ex. H, 256:3-18.

Second, Plaintiff has presented evidence suggesting that she reasonably feared being terminated. Motamed openly bragged about the rapid turnover pace at the BVP level, Hunt Decl. ¶ 11, and he considered it "a positive development that [he] turned over two-thirds of the [BVPs]," Pratt Decl. Ex. A, 97:24-98:16. Moreover, Plaintiff was marginalized in subtle ways: although she "had sat at Mr. Motamed's table in previous years" at CNA's National Segments meetings, Plaintiff was "assigned a seat in the back of the room" at the meeting that occurred in early 2012. Hunt Decl. ¶ 13.

Third, Plaintiff has presented evidence that she experienced a sudden downturn in her performance review ratings, which could reasonably have led her to conclude that Defendant was trying to force her out of the job. In her 2011 performance review, Plaintiff received a rating of "partially meets expectations" in the category of "Relationships" and the newly added category of "Leadership Goal." Pratt Decl. Ex. S. These ratings represented a "significant downgrade" from her supervisor's prior evaluations, *id.* Ex. B, 145:23-146:3, and was given in spite of the fact that Plaintiff had grown the San Francisco Branch to be the third largest CNA branch in the country, Hunt Decl. ¶ 4.[6] Other BVPs who managed worse performing branches received better

---

[6] Defendant argues that *Palacio v. Progressive Ins. Co.*, 244 F. Supp. 2d 1040 (C.D. Cal. 2002), is dispositive on this point. The *Palacio* court reasoned that "[i]f a poor performance rating combined with a reduction in pay cannot support constructive discharge, [citing *Turner*, 7 Cal. 4th at 1247], an average evaluation combined with a pay increase, however modest, cannot raise the specter of constructive discharge." 244 F. Supp. 2d at 1054. But the plaintiff in *Palacio* did "not offer evidence that she was singled out for this treatment," and "[h]er performance rating was consistent with her prior evaluations, both in terms of her overall rating and the specific comments contained therein." *Id.* Here, Plaintiff has presented evidence that CNA management targeted her specifically, that her 2011 evaluation was a "significant downgrade" compared to previous years, and that she had not previously received negative feedback regarding her "leadership" capabilities. The Court therefore finds *Palacio* unpersuasive in this context. *See Juell v. Forest Pharms., Inc.*, 456 F. Supp. 2d 1141, 1152 (E.D. Cal. 2006) ("[T]he fact that plaintiff was able to competently perform his job and meet expectations does not prevent him from asserting that his working

1  performance reviews—and therefore higher raises—than Plaintiff. Hunt Decl. ¶ 25. Indeed,

2  Plaintiff was so distraught by her 2011 performance review that she began to see a therapist

3  "because [she] felt like [she] was having a career crisis." Pratt Decl. Ex. H, 59:2-5. Plaintiff

4  received further negative feedback at her 2012 midyear checkpoint review. *Id.* 273:14-274:24.

5  Disturbed by what seemed to her to be an unjustified about-face, Plaintiff asked Stonehouse "if he

6  was trying to get rid of [her]." *Id.* He responded, "Wouldn't you rather hear it from me?" *Id.*

7  Stonehouse also told Plaintiff to "protect" herself. *Id.*

8      It is the province of the jury to decide what a reasonable person would do under these

9  circumstances. Given the vigorously disputed factual record in this case, the Court cannot resolve

10 Plaintiff's constructive termination claim as a matter of law. Applying the well-settled standard

11 for summary judgment, the Court finds that Plaintiff has presented sufficient evidence to give rise

12 to triable issues of material fact regarding whether Plaintiff's working conditions were so

13 intolerable that a reasonable employee in her position would resign. As discussed further below,

14 triable issues of material fact also exist as to whether Plaintiff's constructive termination was in

15 violation of public policy. Accordingly, Defendant's motion for summary judgment on Plaintiff's

16 constructive termination claim is DENIED.

### C. Second Cause Of Action (Gender Discrimination) And Third Cause Of Action (Age Discrimination)

19 California's Fair Housing and Employment Act ("FEHA") makes it unlawful

> [f]or an employer, because of the . . . sex, gender, . . . [or] age . . . of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

24 Cal. Govt. Code § 12940(a).

25     "Because California law under the FEHA mirrors federal law under Title VII, federal cases

26 are instructive." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219 (9th Cir. 1998). California

---

28 conditions were intolerable such that a reasonable person faced with these conditions would have felt compelled to resign.").

courts apply the three-stage burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to resolve discrimination claims. *Reid*, 50 Cal. 4th at 520 n.2. Under this framework, the plaintiff must first establish a prima facie case of discrimination, which she can do by showing that "(1) [s]he belongs to a protected class; (2) [s]he was qualified for the position; (3) [s]he was subject to an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably." *Chuang*, 225 F.3d at 1123. Once the plaintiff has established a prima facie case, the burden shifts to the employer to show a "legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 1123-24. If the employer sustains its burden, the burden shifts back to the plaintiff to prove that the employer's asserted reasons for the action are pretextual. *Id.* at 1124.

In the context of a summary judgment motion in an employment discrimination action, "the burden is reversed because the defendant who seeks summary judgment bears the initial burden." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (internal quotation marks and alterations omitted). Therefore, "to prevail on summary judgment, the employer is required to show either that (1) plaintiff [cannot] establish one of the elements of the FEHA claim or (2) there [is] a legitimate, nondiscriminatory reason for its [actions]." *Id.* (internal quotation marks and alterations omitted). Once the defendant makes this showing, the plaintiff must "demonstrate either that the defendant's showing [is] in fact insufficient or that there [is] a triable issue of material fact to the defendant's showing" to survive summary judgment. *Id.* at 746 (internal quotation marks and alterations omitted).

### 1. Defendant Has Not Shown That Plaintiff Cannot Establish A Prima Facie Case For Discrimination

Under *McDonnell Douglas*, "the requisite degree of proof necessary to establish a prima facie case for [discrimination] on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Defendant concedes that Plaintiff belonged to protected age and gender classes and that she was qualified for the BVP position, but argues that the undisputed evidence demonstrates she did not suffer an adverse employment action and was not treated differently than similarly

situated individuals outside her protected class.

Adverse employment actions include "not only . . . so-called 'ultimate employment actions' such as termination or demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054 (2005). As the Court found above, Plaintiff has presented sufficient evidence to establish a triable issue of fact as to whether Plaintiff was constructively terminated from her employment by Defendant, which clearly constitutes an "ultimate" employment action. Moreover, Plaintiff has presented evidence that her allegedly unjustified negative performance reviews in 2011 and 2012 made it "highly unlikely" she would advance in the company. *See* Pratt Decl. Ex. C, 328:5-19. The Court finds that a rational factfinder could conclude that those negative performance reviews adversely or materially affected Plaintiff's job performance or opportunity for advancement. Thus, Plaintiff has established a triable issue of fact as to whether she was subjected to an adverse employment action.

Plaintiff has also established a triable issue of fact as to the fourth element of the prima facie test by presenting evidence that the individual who replaced her was younger and male, and that he received better performance review ratings despite worse objective performance. *See* Pratt Decl. Exs. FF, II, KK; *Chuang*, 225 F.3d at 1126. Defendant therefore has not carried its burden to show that Plaintiff cannot establish a prima facie case for discrimination.

### 2. Defendant Has Articulated Legitimate Non-Discriminatory Reasons For Plaintiff's Termination

Defendant argues that Plaintiff's 2011 and 2012 performance reviews contained "legitimate criticisms" and were informed by "the same standards applied to all branch vice presidents by the new management of CNA." Mot. at 18. Indeed, Stonehouse's comments in the performance reviews articulate legitimate, non-discriminatory reasons for the ratings given. Pratt Decl. Ex. S. Stonehouse also testified that Plaintiff's performance suffered in the wake of structural changes instituted by Motamed and Szerlong. *See* Dkt. No. 114-3, at 56:12-57:20 ("The issues tended to be about getting all the team players on the same page and engaged collectively. .

10

. . And so there was some clear resistance to that new reporting relationship, and so getting everyone on the same page and heading in the same direction [sic].").

The Court does not dwell on this step of the *McDonnell Douglas* test. Even assuming that Defendant's evidence is sufficient to demonstrate a legitimate, non-discriminatory reason for its conduct, Plaintiff has presented enough evidence of pretext or discriminatory motive to create a triable issue of fact.

### 3. Plaintiff's Evidence Establishes Triable Issues Of Fact Regarding Pretext

A plaintiff asserting a discrimination claim can "demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112-13 (9th Cir. 2011). Direct evidence—that is, "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption"—creates "a triable issue as to the actual motivation of the employer . . . even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221 (internal quotation marks omitted). If direct evidence is not available, "the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Id.* at 1222. Although the Ninth Circuit has stated that "the circumstantial evidence relied on by the plaintiff must be 'specific' and 'substantial,'" *France*, 795 F.3d at 1175, that standard "is tempered by our observation that a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one." *Earl*, 658 F.3d at 1113 (internal quotation marks omitted).

Contrary to Defendant's assertions, Plaintiff does not "simply second-guess[] the value judgments contained" in her performance reviews. Mot. at 20. First, Plaintiff presents statistical evidence suggesting that female and older employees are treated less favorably than male and younger employees with respect to field leadership positions. *See Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995) (recognizing that statistical evidence may be used to show pretext). For example, as noted above, the evidence shows that of the 12 BVPs hired after Motamed and

1  Szerlong took over and before Plaintiff left CNA, only two were women. Dkt. No. 113. And of
2  the 11 BVPs who were terminated and replaced during that time period, eight of them were
3  replaced by someone more than ten years younger. *See* Pratt Decl. Ex. NN; Dkt. Nos. 111, 113.

4  Second, Defendant's criticism of Plaintiff's performance was largely subjective in nature, which is "particularly susceptible of abuse and more likely to mask pretext." *Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003) (internal quotation marks omitted). For example, Szerlong voiced concerns to Stonehouse about Plaintiff's "leadership style" and whether she was "the right person to lead the organization . . . not only currently but into the future." Pratt Decl. Ex. B, 94:9-17. "A jury could find [this criticism] vague enough to be suspect given the surrounding events." *Liu*, 347 F.3d at 1137.

Third, as noted above, Plaintiff's replacement performed objectively worse than Plaintiff yet received better performance review ratings. This suggests that Defendant's unfavorable treatment of Plaintiff was motived by discriminatory reasons. *See Godwin*, 150 F.3d at 1222 ("Facts tending to show that the chosen applicant may not have been the best person for the job are probative as they suggest that the explanation may not have been the real reason for choosing the chosen applicant over the plaintiff.") (internal quotation marks and alterations omitted); *Shelley v. Geren*, 666 F.3d 599, 610 (9th Cir. 2012) ("Evidence of a plaintiff's superior qualifications, standing alone, may be sufficient to prove pretext.").

Finally, Plaintiff's circumstantial evidence suggesting that Defendant had a corporate culture hostile to female and older workers is further support for pretext. *See supra*, pp. 6-7; *Juell*, 456 F. Supp. 2d at 1156.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that, based on the cumulative circumstantial evidence, a triable issue of fact exists as to whether Plaintiff can demonstrate that Defendant's allegedly legitimate non-discriminatory reasons for subjecting her to adverse employment actions were pretextual. Defendant's motion for summary judgment on Plaintiff's discrimination claims is therefore DENIED.

### D. Fourth Cause Of Action (Failure To Investigate/Prevent Discrimination)

Section 12940(k) of the California Government Code makes it unlawful "[f]or an employer

1 . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from
2 occurring." To prevail on this claim, Plaintiff must show that (1) she was subjected to
3 discrimination; (2) Defendant failed to take all reasonable steps to prevent the discrimination; and
4 (3) Defendant's failure caused Plaintiff to suffer injury, damage, loss, or harm. *Lelaind v. City &*
5 *Cty. of S.F.*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008). "One such reasonable step, and one
6 that is required in order to ensure a discrimination-free work environment, is a prompt
7 investigation of the discrimination claim." *Cal. Fair Emp't & Hous. Comm'n v. Gemini*
8 *Aluminum Corp.*, 122 Cal. App. 4th 1004, 1024 (2004).

9 Plaintiff has presented evidence that she spoke with both Wong and Liz Aguinaga, Vice
10 President of Human Resources, about her concerns regarding the absence of women in field
11 leadership positions. Pratt Decl. Ex. D, 50:4-15; Ex. G, 162:5-9. Defendant contends that
12 Plaintiff's conversations with its Human Resources representatives were merely "observations"
13 rather than formal "complaints." Mot. at 16. But Plaintiff has presented evidence suggesting that
14 Wong believed Plaintiff's complaints "warranted . . . escalat[ion]" and reported the substance of
15 those conversations to Aguinaga. Pratt Decl. Ex. D, 59:14-60:2. Construing the evidence in the
16 light most favorable to Plaintiff, the Court finds that a triable issue of fact exists as to whether
17 these conversations were sufficient to put Defendant on notice of the alleged discrimination,
18 thereby triggering its remedial obligation under § 12940(k). *See Nichols v. Azteca Rest. Enters.*,
19 256 F.3d 864, 876 n.10 (9th Cir. 2001) ("Although these complaints [to the plaintiff's assistant
20 and general managers] did not follow the formal reporting requirements of [the defendant's] anti-
21 harassment policy, they were sufficient to place the company on notice of the harassment.").
22 Defendant does not present evidence that any investigation of Plaintiff's complaints occurred.

23 Because Plaintiff has raised triable issues of fact regarding her discrimination claims, and
24 because she has presented evidence that Defendant failed to take adequate steps to prevent such
25 conduct, Defendant's motion for summary judgment on Plaintiff's claim for failure to prevent
26 discrimination is DENIED.

27 **E.  Fifth Cause Of Action (Retaliation)**
28 The *McDonnell Douglas* burden-shifting framework also applies to FEHA retaliation

13

claims. *Yanowitz*, 36 Cal. 4th at 1042. To establish a prima facie case of retaliation, the employee must show that (1) she "engaged in a protected activity"; (2) she "was subsequently subjected to an adverse employment action"; and (3) "a causal link exists between the two." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). If a plaintiff is able to establish a prima facie case, the burden shifts to the defendant to show a "legitimate, non-discriminatory" reason for subjecting the plaintiff to the adverse employment action. *Id.* If the defendant meets that burden, the plaintiff must raise a genuine issue of material fact as to whether the defendant's legitimate, non-discriminatory reason is pretextual. *Id.* Retaliation claims "must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Defendant again argues that Plaintiff did not engage in a protected activity because her conversations with Wong were mere "observations" rather than formal complaints of discriminatory conduct. As noted above, however, Plaintiff has presented sufficient evidence to create a triable issue of fact on this element. *See Yanowitz,* 36 Cal. 4th at 1043 ("It is well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory.")

Defendant further contends that Plaintiff cannot demonstrate the necessary "causal link" to establish a prima facie case for retaliation because the undisputed evidence shows that Defendant was unaware of the protected activity. This argument fails. Plaintiff has presented evidence that she complained about discriminatory conditions in the workplace to both Wong and Aguinaga, and that Wong independently reported Plaintiff's complaints to Aguinaga—Defendant's Vice President of Human Resources. This evidence is sufficient to present a triable issue of fact as to whether Defendant was aware of Plaintiff's protected activity.

Defendant concedes that the same burden-shifting analysis applied above to Plaintiff's discrimination claims applies here to Plaintiff's retaliation claim. Therefore, because Plaintiff has presented triable issues of fact as to whether Defendant's legitimate, non-discriminatory reasons for subjecting Plaintiff to adverse employment actions was pretextual, Defendant's motion for summary judgment on Plaintiff's retaliation claim is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED. The Court sets a case management conference for September 24, 2015, at 2:00 p.m. in Courtroom 15, 18th Floor, 450 Golden Gate Avenue, San Francisco. The Court continues the deadlines set for 28 days before the pretrial conference pursuant to this Court's Civil Pretrial and Trial Standing Order and will reset those deadlines at the case management conference.

**IT IS SO ORDERED.**

Dated: September 16, 2015

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge